```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION


BREAKBULK TRANSPORTATION, INC.,  §
                                 §
      Plaintiff,                 §
                                 §
v.                               §   CIVIL ACTION NO. H-07-2985
                                 §
M/V RENATA, her equipment,       §
appurtenances, and freight,      §
in rem, and                      §
BALTICON LINES, in personam,     §
                                 §
      Defendants.                §
```

MEMORANDUM AND ORDER

Pending is Defendant M/V Renata's and Defendant Balticon Lines GmbH's Motion to Dismiss (Document No. 15). After having considered the motion, response, reply, and the applicable law, the Court concludes for the reasons set forth below that the motion should be granted.

I.  Background

Plaintiff BreakBulk Transportation, Inc. ("Plaintiff"), entered an agreement--a "Conlinebooking" Liner Booking Note--with the carrier, Defendant Balticon Lines GmbH ("Balticon"), for the carriage of three drilling rigs from the Port of Houston to Mina Sultan Qaboos, Oman, aboard the Defendant M/V Renata (together with Balitcon "Defendants"). *See* Document No. 4. ¶ 6. Plaintiff alleges that, at the time of loading, the stowage plan erroneously

called for only two--not three--drilling rigs to be loaded onto the M/V Renata.  Id. ¶ 7.  However, after a $50,000 premium was allegedly paid in addition to the previously agreed-to rate, Balticon loaded the third rig as well.  Id. ¶¶ 8-9.  A few days after all Plaintiff's property was loaded onto the M/V Renata, Balticon allegedly unloaded portions of it without notice to Plaintiff because the M/V Renata was allegedly over-booked with cargo.  Id. ¶¶ 10-11.  The M/V Renata, it is alleged, subsequently departed and delivered only a portion of Plaintiff's cargo to Oman.  Plaintiff claims damages incurred by additional charges to ship the balance of the cargo, including storage and expediting fees, the loss of the premium paid to Balticon, customs penalties, and legal fees.  Id.  ¶¶ 12-13.

The Liner Booking Note contained the following forum selection and choice of law clause: "Any dispute arising under this Bill of Lading shall be decided in the country where the carrier has his principal place of business, and the law of such country shall apply except as provided elsewhere herein."  *See* Document No. 15, ex. 1.  According to the Liner Booking Note, the carrier, Balticon, is located in Hamburg, Germany.  Id.  In addition, the Bills of Lading themselves contained a similar clause: "Any lawsuit arising under the Bill of Lading shall be filed in Hamburg, Germany. . . . German law shall apply."  *See* id., ex. 2.

Relying on these forum selection clauses, Defendants now move to dismiss Plaintiff's case and for release of their security bond deposited in the registry of the Court.[1]  *See* id.  Plaintiff argues that (1) the forum selection clause is permissive--not mandatory--and thus this Court is a proper forum; (2) Balitcon waived its right to enforce the forum selection clause by posting security for the *in personam* claims; (3) the application of the forum selection clause would result in an impermissible lessening of Defendants' liability; (4) this Court should retain jurisdiction over the matter in order to review the result of any German litigation; and (5) even if the case is transferred, the bond should likewise be transferred and not released to Defendants.  *See* Document No. 19.

---

[1] Although Defendants in their motion allude to this Court's "lack of jurisdiction," they do not state the precise rule under which they are proceeding--Rule 12(b)(1) or 12(b)(3).  The Fifth Circuit "has noted, but declined to address, the 'enigmatic question of whether motions to dismiss on the basis of forum selection clauses are properly brought as motions under FED. R. CIV. P. 12(b)(1) [or] 12(b)(3).'"  Lim v. Offshore Specialty Fabricators, Inc., 404 F.3d 898, 902 (5th Cir. 2005) (quoting Haynsworth v. The Corp., 121 F.3d 956, 961 (5th Cir. 1997)).  "In any event, [the Fifth Circuit] has treated a motion to dismiss based on a forum selection clause as properly brought under Rule 12(b)(3) (improper venue)."  Id. (citing Albany Ins. Co. v. Almacenadora Somex, S.A., 5 F.3d 907, 909 & n.3 (5th Cir. 1993)).  A forum selection clause does not deprive a court of its jurisdiction; it merely limits a court's inquiry to the enforceability of that clause. *See* Trafigura Beheer B.V. v. M/T PROBO ELK, No. 06-20576, 2007 WL 2033336, at *1 (5th Cir. July 16, 2007).  "[O]ther circuits agree that a motion to dismiss based on an arbitration or forum selection clause is proper under Rule 12(b)(3)."  Lim, 404 F.3d at 902.  Defendants' Motion to Dismiss is therefore analyzed under FED. R. CIV. P. 12(b)(3).

II.  <u>Discussion</u>

A.  <u>Mandatory or Permissive Nature of the Forum Selection Clauses</u>

A forum selection clause is *prima facie* valid and should be enforced unless the resisting party meets its hefty burden to demonstrate that enforcement would be unreasonable.  <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 92 S. Ct. 1907, 1913 (1972); <u>Afram Carriers, Inc. v. Moeykens</u>, 145 F.3d 298, 301 (5th Cir. 1998) (finding a forum selection clause unreasonable where (1) the clause was the product of fraud, (2) enforcement deprives the plaintiff of his day in court due to the inconvenience of the selected forum, or (3) the clause contravenes public policy).  Whether a forum selection clause mandates a particular forum to the exclusion of all others, or merely permits a particular forum while allowing actions to be brought in other proper forums, is determined by the language of the clause itself.  *See* <u>City of New Orleans v. Mun. Admin. Servs.</u>, 376 F.3d 501, 504 (5th Cir. 2004).  "For a selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive."  <u>Id.</u>  The analysis turns on the parties' intent as manifested by the language in the contractual forum selection clause.  *See* <u>id.</u>

Accordingly, a forum selection clause providing that "[j]uris-diction and venue over any disputes arising out of this agreement

4

shall be proper only in the federal or state courts in Dallas County, Texas," has been held mandatory. <u>Muzumdar v. Wellness Int'l Network, Ltd.</u>, 438 F.3d 759, 761 (7th Cir. 2006). However, a forum selection clause providing merely that a particular court "shall have jurisdiction" over the controversy has been found to be permissive because it does not foreclose the possibility that other courts may also have jurisdiction. *See* <u>Caldas & Sons, Inc. v. Willingham</u>, 17 F.3d 123, 127-28 (5th Cir. 1994); <u>Keaty v. Freeport Indonesia, Inc.</u>, 503 F.2d 955, 956-57 (5th Cir. 1974) (finding a forum selection clause providing, "This agreement shall be construed and enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York," permissive because it did no more than subject the parties to jurisdiction and venue in New York, but not to the exclusion of other possible forums).

Unlike <u>Caldas & Sons, Inc.</u> and <u>Keaty</u>, the forum selection clauses here mandate an exclusive forum--Hamburg, Germany. The liner booking note requires that "[a]ny dispute . . . *shall* be decided in [Hamburg, Germany]," and the bills of lading require that "[a]ny lawsuit . . . *shall* be filed in Hamburg, Germany." (emphasis added). The mandatory language of the clauses therefore forecloses any right to file or to maintain a lawsuit in any forum other than Hamburg, Germany. *See* <u>Mitsui & Co. v. Mira M/V</u>, 111 F.3d 33 (5th Cir. 1997); <u>Union Steel Am. Co. v. M/V Sanko Spruce</u>,

14 F. Supp. 2d 682, 687 (D.N.J. 1998) (holding mandatory a forum selection clause reading: "Any dispute arising under this bill of lading shall be decided in the country where the Carrier has his principal place of business, and the law of such country shall apply except as provided elsewhere herein"); Bison Pulp & Paper v. M/V Pergamos, No. 89-civ-1392(MJL), 1995 WL 880775, at *2 (S.D.N.Y. Nov. 29, 1995) (forum selection clause providing that "[a]ny dispute arising under this bill of lading shall be decided in the country where the carrier has his principal place of business, and the law of such country shall apply except as provided elsewhere herein," held mandatory and enforceable).  Plaintiff filed this lawsuit in this Court in contravention of its agreement to file the same in Hamburg, Germany.

B.   The Effect of the Stipulation on the *In Personam* Claim

Plaintiff also argues that because the Defendants posted security for both the *in rem* and *in personam* claims in the Stipulation (Document No. 8), the *in personam* Defendant, Balticon, has waived its right to enforce the forum selection clauses. According to Plaintiff, although the policies allowing a letter of undertaking to not disrupt an *in rem* defendant's right to enforce a forum selection clause are sound, such policies are not

implicated when an *in personam* defendant enters a letter of undertaking.[2]

Plaintiff cites no authority for this proposition. The Stipulation, moreover, specifically states that, in exchange for releasing the M/V Renata and the property of Balticon, Defendants will enter a Verified Statement of Interest and an appearance in this action, but the parties mutually agreed that "any appearance, claim or answer shall be entirely without prejudice to any rights or defenses of Balticon Lines and/or the M/V RENATA, . . . including, but not limited to, challenges to the subject matter and/or personal jurisdiction and/or *the forum* which may be asserted." *See* Document No. 8 at 3 (emphasis added). Thus, the express terms of the Stipulation mutually agreed by Plaintiff and Defendants obviate any claim that Defendants "waived" the mandatory venue clause or Defendants' rights to challenge the forum in which Plaintiff filed its lawsuit. *See* Trafigura Beheer B.V. v. M/T PROBO ELK, No. 06-20576, 2007 WL 2033336, at *1 (5th Cir. July 16, 2007) (rejecting the argument that a letter of undertaking

---

[2] "A traditional letter of undertaking provides that, in consideration of the vessel not being seized and released on bond, the vessel owner will file a claim to the vessel and pay any judgment rendered against the vessel even if the vessel itself is subsequently lost," and "is sufficient to perfect *in rem* jurisdiction in the absence of an arrest of the vessel." Panaconti Shipping Co., S.A. v. M/V Ypapanti, 865 F.2d 705, 707-08 (5th Cir. 1989). A stipulation effectively releases an arrested vessel in exchange for the vessel owner's posting of a security bond with the registry of the court. Id.; *see also* GRANT GILMORE AND CHARLES BLACK, THE LAW OF ADMIRALTY § 9-89 (2d ed. 1975).

superseded a forum selection clause; although the defendants submitted to the court's jurisdiction by virtue of the letter of undertaking, "a party's mere appearance as a claimant does not waive venue."); <u>ICC Export, Inc. v. M/V Chemical Explorer</u>, 1983 AMC 1846, 18447-48 (S.D. Tex. 1983) (concluding that a letter of undertaking providing, "This letter is written entirely without prejudice to any rights or defenses which the said vessel or said owners may have," reserved the right to challenge jurisdiction). Plaintiff's waiver argument is without merit.

C.   <u>Whether Dismissal Lessens Defendant's Liability</u>

Plaintiff next argues that, because German law allegedly recognizes neither *in rem* actions against vessels nor maritime liens for cargo loss and damage, dismissal of this case in favor of a German forum is impermissible under the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701 advisory note, because it effectively lessens Defendants' liability.  *See* Document No. 19 at 8.  This argument is likewise without merit.

"The relevant question" when adjudging whether a term in a Bill of Lading violates section 3(8) of COGSA "is whether the substantive law to be applied will reduce the carrier's obligations to the cargo owner below what COGSA guarantees." <u>Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer</u>, 115 S. Ct. 2322, 2329 (1995). In <u>Sky Reefer</u>, the Supreme Court summarized COGSA's substantive

remedial provisions intended to correct specific abuses by carriers:

> [Section] 3 . . . requires that the carrier "exercise due diligence to . . . [m]ake the ship seaworthy" and "[p]roperly man, equip, and supply the ship" before and at the beginning of the voyage, § 3(1), "properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried," § 3(2), and issue a bill of lading with specified contents, § 3(3). Section 3(6) allows the cargo owner to provide notice of loss or damage within three days and to bring suit within one year. *These are the substantive obligations and particular procedures that § 3(8) prohibits a carrier from altering to its advantage in a bill of lading.* Nothing in this section, however, suggests that the statute prevents the parties from agreeing to enforce these obligations in a particular forum. By its terms, it establishes certain duties and obligations, separate and apart from the mechanisms for their enforcement.

Sky Reefer, 115 S. Ct. at 2327 (internal citations omitted) (emphasis added).

Plaintiff makes no argument and cites no authority to show that German law in any way lessens a carrier's liability when compared to the pertinent provisions of COGSA. Indeed, the Court finds that it does not. "German law dictates that [its] courts will apply an international convention and amending protocols together known as the Hague-Visby Rules, a fraternal equivalent of COGSA." Reed & Barton Corp. v. M.V. Tokio Exp., 1999 WL 92608, at 3 (S.D.N.Y. Feb. 22, 1999).[3] The Hague-Visby Rules impose

---

[3] *See also* WILLIAM TETLEY, THE PROPOSED NEW UNITED STATES SENATE COGSA: THE DISINTEGRATION OF UNIFORM INTERNATIONAL CARRIAGE OF GOOD BY SEA LAW, 30 J. MAR. L. & COMM. 595, 608 (1999) (recognizing that although Germany

liabilities and guarantee obligations substantively identical to those in COGSA: "The carrier shall be bound before and at the beginning of the voyage to exercise due diligence to (a) Make the ship seaworthy[, and] (2) Properly man, equip, and supply the ship"; shall "properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried[,]" and shall issue a bill of lading with specified contents. *See* HAGUE RULES, art. III, *reprinted in* 3 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW 855-56 (4th ed. 2001). In addition, the Hague-Visby Rules allow the cargo owner to provide notice of loss or damage within three days and to bring suit within one year, and prohibit a carrier from altering liability to its advantage in a bill of lading. Id. ("Any clause, covenant, or agreement in a contract of carriage relieving the carrier *or the ship* from liability . . . or lessening such liability . . . shall be null and void and of no effect.'" (emphasis added)).

Plaintiff's argument is solely based on German law not recognizing an action *in rem* against the vessel or not allowing a maritime lien for cargo loss and damage. These, however, are not

---

did not ratify the Visby Amendments, it did adopt them into its commercial code to supplement the Hague Rules it already adopted from its ratification of the Brussels Convention--therby making Germany "for practical purposes, . . . a Hague/Visby State"); ANTHONY DIAMOND, RESPONSIBILITY FOR LOSS OF, OR DAMAGE TO, CARGO ON A SEA TRANSIT: THE HAGUE OR HAMBURG CONVENTIONS?, *in* CARRIAGE OF GOODS BY SEA 113, 116 (Peter Koh Soon Kwang ed., 1986) (noting the Germany has accepted the Hague-Visby Rules).

substantive duties or obligations imposed by COGSA such as would nullify a forum selection clause but rather, simply, "mechanisms for enforcement of [COGSA] duties." Mitsui & Co. v. Mira M/V, 111 F.3d 33, 35-36 (5th Cir. 1997) (per curiam) (discussing Sky Reefer: "The Court agreed that § 3 of COGSA established clear duties which could not be abrogated by contract, i.e., liability which could not be lessened, but distinguished these from the mechanisms for enforcement of those duties. [The Supreme Court] therefore concluded that, because the clause at issue concerned only the means of enforcing the carrier liability, the clause was enforceable"; and concluding that a foreign forum selection "clause involves not a question of liability but of where it will be enforced and, as such, is valid under COGSA"); *see also,* Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty, 408 F.3d 1250, 1255 (9th Cir. 2005) (rejecting the argument that because the country mandated by the forum selection clause, Korea, did not recognize *in rem* actions, the forum selection clause should be rendered null and void as violative of COGSA); Thyssen, Inc. v. Calypso Shipping Corp., S.A., 310 F.3d 102, 107 (2d Cir. 2002) (per curium) (observing that the assumption "that the lack of an *in rem* cause of action could be considered a violation of COGSA . . . contradict[s] most case law on the matter"); Fireman's Fund Ins. Co. v. M/V DSR Atl., 131 F.3d 1336, 1339-40 (9th Cir. 1998) ("Thus, the mere unavailability of *in rem* proceedings does not constitute a

lessening of the specific liability imposed by [COGSA]; rather, it presents a question of the means . . . of enforcing that liability." (internal quotation marks and citations to Sky Reefer omitted)); Industria Fotografica Interamericana v. M.V. Jalisco, 903 F. Supp. 18, 20 (S.D. Tex. 1995) ("Confusing a right *in rem* to seize with a proper court under the contract is confusing a remedy for a forum. The parties agreed to the jurisdiction choices in the contract."). Application of the forum selection clause in this case has therefore not been shown to deny to Plaintiff any statutory remedies provided by COGSA.

D.  Whether this Court Should Retain Jurisdiction over Enforcement

Next, Plaintiff asks this Court to retain jurisdiction over the case until the German litigation concludes in order to ensure that any German award and subsequent enforcement are fair. Plaintiff cites no applicable authority for this proposition. Sky Reefer, cited by Plaintiff, dealt with the enforceability of a foreign *arbitration* clause and acknowledged that the district court properly retained jurisdiction over the case while compelling *arbitration* in Japan. Sky Reefer, 115 S. Ct. at 2329-30. That Sky Reefer dealt with an arbitration clause is of particular import to the issue of retaining jurisdiction. The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), "reserves to each signatory country the right to

refuse enforcement of an award where the 'recognition or enforcement of the award would be contrary to the public policy of that country.'" Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 105 S. Ct. 3346, 3359-60 (1985) (citing Art. V(2)(b) of the Convention). Thus, the Convention contemplates courts retaining jurisdiction over cases to be *arbitrated* elsewhere in order to ensure the judgment comports with local public policy. *See* id. ("While the efficacy of the arbitral process requires that substantive review at the award-enforcement stage remain minimal, it would not require intrusive inquiry to ascertain that the tribunal took cognizance of the [domestic] claims and actually decided them."). Such is not the case when parties bind themselves to litigate, not arbitrate, their dispute in a foreign forum. It follows that this Court has no basis to retain jurisdiction to review the judgment of a German tribunal in whose jurisdiction the parties agreed to resolve their dispute. *See also* Newey Industries Corp. v. Hyundai Merchant Marine Co., Order, No. H-98-3229 (S.D. Tex. Apr. 16, 1999) (dismissing case based on forum selection clause and declining to retain jurisdiction later to review the foreign court's judgment).

E.  Disposition of Defendants' Security Bond

Plaintiff lastly argues that, because Defendants seek dismissal on grounds of improper venue, the Court should retain the

13

bond, transfer it with the case to Germany, or order Defendants to post another bond in Germany. Plaintiff cites no relevant authority for any such action. Plaintiff filed the case here in violation of its agreement to file a lawsuit only in Hamburg, Germany. It is not entitled to be rewarded for violating its agreement. When the parties have agreed to an enforceable, mandatory foreign forum selection clause, it is incumbent on this Court simply to dismiss the case. <u>Trafigura Beheer B.V.</u>, No. 06-20576, 2007 WL 2033336, at *1 (citing <u>Bremen</u>, 92 S. Ct. 1914).

### III. <u>Order</u>

Accordingly, it is

ORDERED that Defendants M/V Renata's and Balticon Lines GmbH's Motion to Dismiss (Document No. 15) is GRANTED and this action is hereby DISMISSED without prejudice to the claim being filed in Hamburg, Germany.

The Clerk shall notify all parties and provide them with a signed copy of this Order.

SIGNED at Houston, Texas, on this <u>25th</u> day of April, 2008.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE